IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

UNITED STATES OF AMERICA

v.

CRIMINAL NO. 4:19cr51

MARCUS TROY MOODY, and

LATOYA PATRICE CARTER

**Defendant.**

## MEMORANDUM OPINION

On May 15, 2019, a federal grand jury sitting in Newport News named Marcus Troy Moody ("Moody" or "Defendant") and Latoya Patrice Carter ("Carter" or "Defendant") (collectively, "Defendants") in a six-count criminal indictment, charging Conspiracy to Possess with Intent to Distribute Cocaine, in violation of 21 U.S.C. § 846 (Count One); Possession with Intent to Distribute Cocaine, in violation of 18 U.S.C. § 841(a)(1) (Count Two); Possession of a Firearm in Furtherance of Drug Trafficking Crime, in violation of 21 U.S.C. § 924(c)(1)(A) (Counts Three and Four); Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1) (Counts Five and Six). ECF No. 1. Moody was charged with Counts One through Six, while Carter was charged with Counts One through Four. ECF No. 1.

On June 21, 2019, Defendant filed a Motion to Suppress asking the Court to suppress all evidence seized and information learned as a result of an allegedly "illegal search and seizure of Defendant and his property[,]" which occurred on December 30, 2018. ECF No. 26 at 1. The

1

Government filed its Response on July 5, 2019. ECF No. 27. On July 13, 2019, Co-Defendant Carter filed a Motion to Adopt Defendant's Motion to Suppress ("Motion to Adopt"), which the Court allowed.[1] ECF No. 28. On July 25, 2019, the Court conducted a hearing on Defendant's Motion to Suppress and **DENIED** such motion from the bench at the conclusion of the hearing. This Opinion sets forth the Court's reasons for its decision.

I. FACTUAL FINDINGS[2]

In the early morning of December 30, 2018, Officer Christian Paulino ("Officer Paulino") (a patrol officer with the Newport News Police Department) was on patrol near 16th Street and Ivy Avenue in the City of Newport News at approximately 3:42 a.m., when he observed a black Volkswagen fail to stop before the solid white line at a traffic signal. The two front wheels of the Volkswagen were in front of the solid white line. The driver of the vehicle was Defendant Carter, while Defendant Moody was the passenger.

Upon observing this infraction, Officer Paulino activated his body camera and began following the vehicle in order to observe whether further infractions were committed. Officer Paulino then observed (and his body camera recorded) the vehicle: (1) following another vehicle too closely, (2) swerving, and (3) nearly hitting at least one parked vehicle. Officer Paulino proceeded to activate his emergency lights and initiate a traffic stop of the vehicle. Before getting out of his vehicle, Officer Paulino observed Defendant Moody (on the passenger side) reach to the driver's side of the vehicle with both hands more than once, after which Officer Paulino lost sight of Defendant Moody's head. At this stage, Officer Paulino exited his vehicle and approached the

---

[1] The Court finds that because the facts and circumstances at issue are identical, Defendant Carter is permitted to join in Defendant Moody's Motion to Suppress. See, e.g., United States v. Rhodes, No. 3:08CR82, 2013 U.S. Dist. LEXIS 5355, at *2 (E.D. Va. Jan. 14, 2013) (granting co-defendant's motion to join original "motion to suppress due to identical circumstances and facts.").

[2] The facts described in this section are drawn from the evidence presented at the July 25, 2019 suppression hearing unless otherwise stated.

2

vehicle occupied by Defendants.

Officer Paulino approached the passenger's side of the vehicle because of the movement he observed by Defendant Moody. Upon reaching the vehicle, he introduced himself as a Newport News Police Officer. Officer Paulino then inquired as to why Defendant Moody reached over to the driver's side of the vehicle, to which Defendant Moody responded: "that's my girl."

Officer Paulino smelled an odor of marijuana emitting from the vehicle about three or four seconds after approaching the passenger's side. He did not mention the smell to Defendants immediately. Instead, Officer Paulino moved closer to the vehicle to ensure that the odor was coming from the vehicle. After remaining "hunched over for several seconds just to make sure," Officer Pualino inquired as to the source of the marijuana odor. Officer Paulino testified that the Defendants did not indicate that they were smoking. Instead, they indicated that there was someone else in the vehicle who may have smelled like marijuana, but such individual was no longer in the vehicle.

Before proceeding with a search, Officer Paulino waited for a back-up officer to arrive. Once the back-up Officer arrived, Officer Paulino began his search. First, Officer Paulino searched Defendant Moody, after informing him that he smelled the odor of marijuana coming from Moody's person. During the search of Defendant Moody, Officer Paulino found a cell phone, cologne, and $3,913.30 in cash. Officer Paulino then searched Defendant Carter, after informing her that he smelled an odor of marijuana coming from her person. The search of Defendant Carter did not produce any contraband. When Officer Paulino asked whether Defendants had come from somewhere that may have smelled like marijuana, Defendant Carter initially claimed that they had come from a club, but shortly after indicated that it was a house. However, Officer Paulino testified that it was difficult to hear Defendant Carter because she was mumbling.

Officer Paulino proceeded to search the vehicle, beginning with the passenger cabin. In front of the shift knob, Officer Paulino found a loaded firearm magazine. Officer Paulino also found a fully loaded Glock .40 caliber handgun with an extended clip under the passenger seat, in addition to a Glock 9 millimeter handgun with one bullet in the chamber under the driver's seat. Officer Paulino also located a bag that he suspected contained crack cocaine located in the rear seat on the driver's side of the vehicle.[3] No marijuana or marijuana paraphernalia was recovered from the vehicle or either Defendant.

## II. LEGAL STANDARD

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "The suppression or exclusionary rule is a judicially prescribed remedial measure" used to deter Fourth Amendment violations. Segura v. United States, 468 U.S. 796, 804 (1984). Suppression of evidence, however, must be the Court's "last resort, not [its] first impulse." Hudson v. Michigan, 547 U.S. 586, 591 (2006). "The exclusionary rule generates 'substantial social costs,' . . . which sometimes include setting the guilty free and the dangerous at large." Id. (internal quotation omitted). Therefore, the rule only applies "where its remedial objectives are thought most efficaciously served[.]" Id. (internal quotation omitted).

Because warrantless searches and seizures are generally presumed to be unreasonable under the Fourth Amendment, the Government bears the burden of proving by a preponderance of the evidence that such search or seizure is lawful. United States v. Napan, 769 F. Supp. 2d 969,

---

[3] In the Motion to Suppress, Defendants proffer the following items found during the search of the vehicle: (1) a Glock Model 43 9 millimeter handgun, (2) a Glock Model 22 .40 caliber handgun with extended capacity magazine, (3) a bag of white powder cocaine, (4) a bag of compressed cocaine, (5) a scale with white residue, (6) three clear baggies, (7) a firearm magazine containing bullets, and (8) two iPhone 7 cellular telephones. ECF No. 26 at 2. Because the Court finds the Motion to Suppress without merit, any discrepancies in the items discovered are irrelevant at this stage.

971 n.2 (E.D. Va. 2011) (citing Coolidge v. New Hampshire, 403 U.S. 443, 455 (1971) ("The burden is on those seeking the exemption [from the Fourth Amendment's restrictions on searches] to show the need for it.")). As such, "[o]nce the defendant establishes a basis for his motion to suppress, the burden shifts to the government to prove the admissibility of the challenged evidence . . . ." United States v. Bello-Murillo, 62 F. Supp. 3d 488, 491-92 (E.D. Va. 2014). "In the course of deciding a motion to suppress, the district court may make findings of fact, as well as rulings of law." United States v. Stevenson, 396 F.3d 538, 541 (4th Cir.2005); see also Bello-Murillo, 62 F. Supp. 3d at 492 ("At a hearing on a motion to suppress, the credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters to be determined by the trial judge.") (internal quotations omitted).

### III. DISCUSSION

In the instant Motion to Suppress, ECF No. 26, Defendants argue that the traffic stop of the Volkswagen on December 30, 2018, constituted an illegitimate stop in violation of the Fourth Amendment and that all evidence obtained as a result of such stop must be suppressed. Defendants also argue that, even if the traffic stop was initially justified, "there was no reasonable suspicion of a serious crime and that the search of [Defendants] and the vehicle were unconstitutional[.]" Id. at 2. The Court shall address each argument in turn.

#### A. The Traffic Stop Was Justified at its Inception.

"A traffic stop constitutes a 'seizure' under the Fourth Amendment and is subject to review for reasonableness."[4] United States v. Hill, 852 F.3d 377, 381 (4th Cir. 2017) (citation omitted).

---

[4] A passenger in a vehicle stopped by law enforcement is "seized" within the meaning of the Fourth Amendment and thus has standing to challenge to the legality of the stop. Brendlin v. California, 551 U.S. 249, 259 (2007).

5

"Because an ordinary traffic stop is more analogous to an investigative detention than a custodial arrest," the Fourth Circuit applies the two-prong test announced in Terry v. Ohio, 392 U.S. 1, 19–20 (1968), when analyzing the propriety of a traffic stop. United States v. Green, 740 F.3d 275, 279 (4th Cir. 2014) (internal citation omitted). Using this test, the Court must determine [1] "'whether the officer's action was justified at its inception, and [2] whether it was reasonably related in scope to the circumstances which justified the interference in the first place.'" United States v. Rusher, 966 F.2d 868, 875 (4th Cir. 1992) (quoting Terry, 392 U.S. at 20).

With respect to the first prong, a traffic stop is reasonable and justified at its inception "where the police have probable cause to believe that a traffic violation has occurred." Whren v. United States, 517 U.S. 806, 818 (1996); see also United States v. Sheetz, 293 F.3d 175, 183-84 (Defendant's "commission of a traffic infraction provided a basis for the stop of his car."). "[The Court] simply ask[s] whether 'the circumstances, viewed objectively, justify th[e] action.'" United States v. Palmer, 820 F.3d 640, 649 (4th Cir. 2016) (citation omitted). "The standard is met, therefore, when officers observe a traffic violation, regardless of their true, subjective motives for stopping the vehicle." Johnson, 734 F.3d at 275.

Defendants argue that "it is unclear what, if any, traffic infractions were supposed to have been observed by Officer Paulino." ECF No. 26 at 4. However, the Court finds that the Government met its burden by establishing the occurrence of several traffic infractions sufficient to justify a stop, including: (1) failure to abide a traffic light; (2) following another vehicle too closely; and (3) nearly hitting at least one parked vehicle.

The Court found Officer Paulino's testimony that he observed these violations to be credible. First, the Court found that Officer Paulino was justified in initially activating his body camera and following the vehicle due to concerns of a potential DUI at 3:42 in the morning.

6

Second, Officer Paulino's testimony regarding the violations was consistent with the footage from Officer Paulino's body camera, which the Court viewed during the hearing on the instant motion. Such footage, which Officer Paulino testified he activated upon observing the first infraction (failure to abide traffic light), demonstrated that the vehicle occupied by Defendants was following another vehicle too closely, swerving, and that it almost hit at least one parked vehicle. Additionally, Officer Paulino's testimony is corroborated by his issuance of summonses to Defendant Carter for following too closely and failure to abide traffic light. Finally, Defendants did not present any rebuttal evidence as to the traffic infractions.

There is no question that the infractions observed by Officer Paulino constitute traffic violations under Virginia law, and that observing these violations would constitute a lawful basis for a traffic stop. As such, the Court finds that the stop was reasonable and legitimate at its inception.

B. **The Search of Defendants and the Vehicle was Supported by Probable Cause.**

Terry's second prong requires the Court to determine whether the officers' conduct during the traffic stop was reasonably related in scope to the circumstances justifying the stop in the first instance. Rusher, 966 F.2d at 875 (citing Terry, 392 U.S. at 20). A law enforcement officer may only extend the scope or duration of the traffic stop if "he receives the motorist's consent or develops reasonable, articulable suspicion of ongoing criminal activity." Palmer, 820 F.3d at 649–50. If an officer smells marijuana emanating from a vehicle, he has probable cause to search the interior of such vehicle without warrant. United States v. Carter, 300 F.3d 415, 422 (4th Cir. 2002); see also United States v. Humphries, 372 F.3d 653, 658 (4th Cir. 2004) ("We have repeatedly held that the odor of marijuana along can provide probable cause to believe that marijuana is present in a particular place . . . While smelling marijuana does not assure that marijuana is still present, the odor certainly provides probable cause to believe that it is."); Scheetz,

293 F.3d at 183–84 ("Once the car was properly stopped and the narcotics officers smelled marijuana, the narcotics officers properly conducted a search of the car.").

Further, "if an officer smells the odor of marijuana in circumstances where the officer can localize its source to a person, the officer has probable cause to believe that the person has committed or is committing the crime of possession of marijuana." Humphries, 372 F.3d at 659. Such probable cause permits an officer to both arrest and search the individual. See Chimel v. California, 395 U.S. 752, 762–63 (concluding that a search incident to arrest does not violate the Fourth Amendment); United States v. Price, 717 F. App'x 241, 244 (4th Cir. 2018) ("Having concluded that the officers had probable cause to arrest [defendant] for marijuana possession, the district court did not err in concluding that the search of [defendant's] person was a valid search pursuant to that arrest.").

In the instant Motion to Suppress, Defendants argue that it is unclear "whether Officer Paulino actually smelled any odor of marijuana emanating from the vehicle" and therefore conclude that "the officer had no valid basis for conducting a search of the vehicle." ECF No. 26 at 3. During the suppression hearing, however, Officer Paulino testified that he smelled an odor of marijuana emitting from the vehicle about three or four seconds after approaching the passenger's side. Officer Paulino further testified that he moved closer to the vehicle to ensure that the odor was coming from the vehicle, where he remained "hunched over" to ensure sure the smell was marijuana. Officer Pualino proceeded to testify that he inquired as to the source of the marijuana odor, to which the Defendants responded that there was someone else in the vehicle who may have smelled like marijuana, but such individual was no longer in the vehicle.

Additionally, Officer Paulino testified that he informed Defendant Moody of the smell of marijuana coming from his person before searching him. Officer Paulino testified that he similarly

informed Defendant Carter of the smell of marijuana coming from her person before searching her. Officer Paulino further testified that when he asked Defendants whether they had come from somewhere that may have smelled like marijuana, Defendant Carter initially claimed that they had come from a club, but shortly thereafter indicated that it was a house. Finally, Officer Paulino testified that he did not begin his search until a back-up officer arrived at the scene.[5]

Here, "the ... odor of marijuana is the most obvious factor supporting a finding of probable cause." See, e.g., United States v. Champion, 609 Fed. App'x 122, 125 (4th Cir. 2015). Officer Paulino's unrebutted testimony that he smelled marijuana emanating from the vehicle and each of the Defendants individually is sufficient on its own to support a finding of probable cause to search the vehicle and the Defendants. Importantly, neither Defendant presented any evidence to contradict Officer Paulino's testimony that he smelled marijuana during the traffic stop. The Court further found the following additional factors contributed to a finding of probable cause, in addition to substantiating Officer Paulino's concerns for officer safety: (1) the early time of day (3:42 a.m.); (2) multiple observed traffic infractions; (3) Defendants' identification of an individual who may have smelled like marijuana; (4) Defendant Carter's inconsistent statements as to the Defendants' prior location; and (5) the observation of Defendant Moody reaching over to the driver's side of the vehicle more than once after Defendant Moody realized the police were there.

For these reasons, the Government has shown by a preponderance of the evidence that the traffic stop of the vehicle was at all times lawful. Therefore, Defendants' Motion to Suppress is without merit.

---

[5] In the Government's Response, the Government represents that "[t]he second officer confirmed the presence of the smell of marijuana." ECF No. 27 at 2.

## IV. CONCLUSION

For the foregoing reasons, at the conclusion of the suppression hearing, the Court found that Officer Paulino's search of the vehicle as well as his search of each of the Defendants were at all times reasonable and did not violate either Defendant's Fourth Amendment rights. Therefore, Defendant Moody's Motion to Suppress, ECF No. 26, was **DENIED** as to both Defendants.

The Clerk is **DIRECTED** to forward a copy of this Opinion to all Counsel of Record.

**IT IS SO ORDERED**.

/s/
Robert G. Doumar
Senior United States District Judge

UNITED STATES DISTRICT JUDGE

Norfolk, VA
July 31, 2019