## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Newport News Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARCUS TROY MOODY,<br><br>     Defendant/Petitioner. | Case Nos. 4:19-cr-51-1<br>4:22-cv-66 |

### <u>OPINION & ORDER</u>

Before the Court are three motions filed by Petitioner Marcus Troy Moody:[1]

- Motion to Vacate, Set Aside, or Correct a Sentence, filed pursuant to 28 U.S.C. § 2255, ECF No. 125;

- Motion to Dismiss, ECF No. 165; and

- Motion for Release from Custody, ECF No. 158.

For the reasons set forth below, the § 2255 petition as originally filed (ECF No. 125) will be **DENIED** as to Grounds One through Twelve. The Motion to Dismiss (ECF No. 165) will be construed as a motion to amend the § 2255, that motion will be **GRANTED**, and the substance of the motion will be considered as Ground Thirteen of the § 2255 petition. Ground Thirteen will also be **DENIED.** The Motion for Release from Custody (ECF No. 158) will likewise be **DENIED.**

---

[1] The petitioner filed each of his motions *pro se*. Even though his § 2255 petition is not ultimately successful, the petitioner demonstrated a level of thoughtfulness and diligence that far exceeds what the Court typically sees from litigants writing on their own behalf. The Court commends the petitioner and encourages him to continue to apply himself and develop his notable talent for written communication.

## I.   BACKGROUND

In December 2018, Newport News police stopped and searched a vehicle in which the petitioner was a passenger. ECF No. 50 ¶ 7 (SEALED). They found two handguns, an extended-capacity magazine, a bag of powder cocaine, and a scale with white residue. *Id.* The petitioner was arrested along with the driver of the vehicle, Defendant Latoya Patrice Carter.

The petitioner and his co-defendant were both indicted on charges of conspiracy to possess with intent to distribute cocaine (Count One), possession with intent to distribute cocaine (Count Two), two counts of possession of a firearm in furtherance of drug trafficking under 18 U.S.C. § 924(c) (Counts Three and Four), and two counts of felon in possession of a firearm under 18 U.S.C. § 922(g)(1) (Counts Five and Six). ECF No. 1.

Attorney Tyrone C. Johnson was appointed to represent the petitioner. ECF No. 18 at 1. On June 21, 2019, Attorney Johnson filed a motion to suppress the evidence seized during the traffic stop. ECF No. 26. The motion argued that the stop was unconstitutional because it was based on "unspecified traffic infractions" and that the search of the vehicle was unconstitutional because the petitioner "dispute[d]" whether the police "actually smelled any odor of marijuana emanating from the vehicle." *Id.* at 1, 3. After a hearing, the Honorable Robert G. Doumar, to whom this case was originally assigned, denied the motion, finding that the police stopped the vehicle legally after observing at least four traffic violations, including "nearly hitting at least one parked vehicle." ECF Nos. 29 (minutes); ECF No. 86 at

2

40:11–12 (transcript); ECF No. 34 at 2 (order). Based on testimony that the officer smelled marijuana in the vehicle and the defendants' related admissions, Judge Doumar determined that the search was constitutional. ECF No. 34 at 8–9.

On July 26, 2019, the government extended a plea offer to the petitioner to plead guilty to both § 924(c) charges (Counts Three and Four) in exchange for dismissal of the four remaining counts. ECF No. 141-1 at 3–5 (emailed plea offer). The petitioner declined the offer and proceeded to trial. *See id*. at 2 (email declining offer).

At trial, a jury found the petitioner guilty on all six counts. ECF No. 39 at 1. Judge Doumar sentenced him to 87 months of incarceration on Counts One, Two, and Five,[2] all to be served concurrently; 60 months on Count Three to be served consecutively to the sentences for Counts One, Two, and Five; and 60 months on Count Four, to be served consecutively to the sentences for all the other counts. ECF No. 64 at 2. The petitioner appealed, arguing there was insufficient evidence to convict him and that the jury was improperly instructed. *United States v. Moody*, 2 F.4th 180, 187 (4th Cir. 2021). Attorney Mark Bodner was appointed to represent the petitioner on appeal. ECF No. 79. The Fourth Circuit—apparently reluctantly— affirmed the petitioner's convictions. *See Moody*, 2 F.4th at 187 ("This appeal highlights the unfortunate ease with which our law permits conspiracy convictions

---

[2] Judge Doumar determined that Count Six was "duplicative" of Count Five. ECF No. 64 at 1 n.1. Therefore, Counts Five and Six were merged into "a single conviction for sentencing purposes," and the Court did not enter a judgment as to Count Six. *Id.*

for conduct that overlaps almost entirely with underlying substantive offenses. Constrained as we are by the government's charging decisions and our past conspiracy precedent, we affirm on all counts.").

On June 6, 2022, the petitioner filed a motion to vacate his convictions under 28 U.S.C. § 2255. ECF No. 125. The motion was fully briefed. ECF Nos. 134 (memorandum), 141 (opposition), 144 (reply). The matter was transferred to this Court on March 17, 2023. Pursuant to a limited waiver of attorney-client privilege, ECF No. 153, the Court ordered the petitioner's trial and appellate counsel to file affidavits responding to the petition. ECF Nos. 154 (order), 156 (Attorney Bodner's affidavit), 157 (Attorney Johnson's affidavit).

On June 12, 2023, the petitioner filed a Motion for Release From Custody. ECF No. 158. On July 18, 2023, he filed a Motion to Dismiss, directed to Counts Five and Six of the Indictment, as well as a Motion for Appointment of Counsel. ECF Nos. 165–66. The Court determined that a hearing was necessary solely on the issue presented in Ground One of the § 2255 petition—whether Attorney Johnson rendered ineffective assistance during the plea negotiation process. ECF No. 170 at 3. Accordingly, the Court appointed counsel to represent the petitioner at the hearing. *Id.* at 4.

The Court held a hearing on January 19, 2024. ECF Nos. 173 (minutes), 175 (redacted transcript), 176 (SEALED) (full transcript). At the hearing, the petitioner and Attorney Johnson testified about their conversations surrounding the mandatory minimum sentences associated with Counts Three and Four of the

Indictment and the government's offer to dismiss the remaining charges in exchange for a plea of guilty to Counts Three and Four. *See* ECF No. 175 at 12:8–38:17 (testimony of the petitioner), 39:21–60:21 (testimony of Attorney Johnson). The Court also questioned the petitioner about the advice he received regarding his right to testify at trial. *Id*. at 27:14–31:25.[3]

## II.   LEGAL STANDARDS

### A.   Motions to Vacate Under 28 U.S.C. § 2255

Collateral review under 28 U.S.C. § 2255 allows a prisoner in federal custody to challenge the legality of a federal conviction by moving the district court "to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). To obtain such relief, a petitioner must prove by a preponderance of the evidence that: (1) their sentence or conviction was "imposed in violation of the Constitution or laws of the United States," (2) the district court "was without jurisdiction to impose such sentence," (3) the sentence exceeds "the maximum authorized by law," or (4) the sentence or conviction is "otherwise subject to collateral attack." *Id.*

A § 2255 petition "is expected to state facts that point to a real possibility of constitutional error." *Blackledge v. Allison,* 431 U.S. 63, 75 n.7 (1977) (punctuation and citation omitted). Courts construe filings by *pro se* petitioners liberally. *See*

---

[3] The petitioner also filed a Motion to Compel, seeking access to Attorney Johnson's complete case file. ECF No. 140. The Court granted that motion, ordering Attorney Johnson to provide a copy of his case file to post-conviction counsel and directing post-conviction counsel to file a supplemental memorandum in support of the § 2255 petition if such a filing was warranted. ECF No. 177 at 2. Post-conviction counsel did not file such an amendment.

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, "[i]f it plainly appears from the motion and any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." *United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013) (quoting R. Gov. § 2255 Proc. in U.S. Dist. Cts. 4(b)).

### B.    Ineffective Assistance of Counsel Claims

The Sixth Amendment to the United States Constitution assures that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the [a]ssistance of [c]ounsel for his defense." U.S. Const. amend. VI. The Sixth-Amendment right to effective assistance of counsel "extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012) (citation omitted); *United States v. Mayhew*, 995 F.3d 171, 177 (4th Cir. 2021).

A claim of ineffective assistance of counsel is appropriate when "counsel's conduct so undermined the proper functioning of the adversarial process that the trial" did not "result" in a just outcome. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a petitioner must establish two prongs: deficient performance and actual prejudice. *Id.* at 687. "[F]ailure of proof on either prong ends the matter." *United States v. Roane*, 378 F.3d 382, 404 (4th Cir. 2004).

To establish deficient performance, the petitioner "must [show] that counsel's representation fell below an objective standard of reasonableness," gauged by "prevailing professional norms." *Wiggins v. Smith,* 539 U.S. 510, 521 (2003)

6

(quotation marks omitted); *Strickland*, 466 U.S. at 688. Review under this prong is "highly deferential," and courts strongly presume that counsel exercised reasonable professional judgment. *Strickland*, 466 U.S. at 689; *see also Kimmelman v. Morrison*, 477 U.S. 365, 381–82 (1986) (discussing *Strickland*'s "highly demanding" standard). Further, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland,* 466 U.S. at 690. It is not enough for the petitioner to make "vague and conclusory allegations [] in a § 2255 petition." *Dyess*, 730 F.3d at 359 (quotation marks and citation omitted). They must identify specific "acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment," *Strickland*, 466 U.S. at 680, and "show that counsel's actions were not supported by a reasonable strategy," *Massaro v. United States*, 538 U.S. 500, 505 (2003) (citation omitted). Only in "relatively rare situations" will a § 2255 petitioner establish that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Tice v. Johnson*, 647 F.3d 87, 102 (4th Cir. 2011) (quoting *Strickland*, 466 U.S. at 690) (punctuation omitted).

Prejudice is proved when a petitioner shows "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" of a different result exists when the error is "sufficient to undermine confidence in the outcome." *Id.* Thus, the petitioner must show that counsel's failure was "so serious as to deprive [the petitioner] of a fair trial." *Id.* at 687.

### C.     Motions for Release Pending Resolution of a Habeas Petition

"To prevail on a motion for release [pending the court's decision] in a habeas case, the appellant must show that [their] petition presents a substantial constitutional claim upon which [they have] a high probability of success[] and that extraordinary circumstances warrant his release." *United States v. Perkins*, 53 F. App'x 667, 669 (4th Cir. 2002) (unpublished) (citing *Aronson v. May*, 85 S. Ct. 3, 4–5 (1964) (Douglas, J., in chambers)).

### III.   ANALYSIS

### A.     § 2255 Petition

The petitioner asserts 12 grounds to vacate his conviction based upon ineffective assistance of counsel. ECF No. 125 at 4–17. He alleges Attorney Johnson failed to:

(1)     advise him correctly "during the plea negotiation process,"

(2)     "call [the petitioner] as a rebuttal witness" during a suppression hearing,

(3)     "investigate [the] arresting officer's bonafides,"

(4)     "present the [full body-worn] camera footage to the court to rebut [the] arresting officer's testimony,"

(5)     "file a notice of appeal to the suppression decision,"

(6)     "strike [a juror] after the records showed a clear conflict of interest" between that juror "and the [C]ourt's Marshal officer,"

(7)     permit the petitioner "to testify on his own behalf to present a defense theory and rebut [the] government's arguments,"

8

(8)    "object to the [C]ourt submitting a defective and generic verdict form,"

(9)    "request a lesser included offense instruction[] to the jury," and

(10)    "challenge an [] indictment" that did not allege an essential element of the felon-in-possession charges.

*Id.* at 4–15. The petitioner further alleges that Attorney Bodner was ineffective because he failed to:

(11)    "challenge pre-trial and trial errors and issues on appeal."

*Id.* at 16. Finally, the petitioner alleges that:

(12)    "ineffective assistance of counsel deprived [him]" of "[Fourth-]Amendment protections against illegal search and seizure."

*Id.* at 17.[4] For the reasons explained below, the petitioner fails to prove either deficient performance or actual prejudice as to any of the 12 grounds. *See Strickland*, 466 U.S. at 692.

### i.    *Ground One: Advice During Plea Negotiations*

The § 2255 petition alleges that Attorney Johnson provided "misadvice during the plea negotiation process with regard[] to the revised [§] 924(c) 'stacking' provision,'" which resulted in the petitioner rejecting a plea offer he otherwise would have accepted. ECF No. 125 at 4. After reviewing the record and weighing the

---

[4] The Court also construes the petitioner's Motion to Dismiss as a thirteenth ground. *See* Part III.B., *infra.*

testimony of the petitioner and Attorney Johnson, the Court concludes that counsel was not ineffective.

Prior to passage of the First Step Act of 2018, a defendant convicted on two counts under 18 U.S.C. § 924(c) in a single case faced a mandatory minimum sentence of five years of incarceration on the first count and 25 years (consecutive) on the second, for a total mandatory minimum sentence of 30 years. This practice of counting convictions in the same case for the purpose of sentence enhancement was called "stacking." Section 403 of the First Step Act eliminated stacking under § 924(c). Thus, a defendant sentenced on two § 924(c) counts in the same case who does not have a prior conviction under § 924(c) now faces a five-year minimum sentence on the second § 924(c) offense, rather than 25 years.

The First Step Act was enacted on December 21, 2018, and took effect immediately. Therefore, when the petitioner was indicted, on May 15, 2019 (ECF No. 1), his two charges under § 924(c) carried a collective mandatory minimum sentence of 10 years, not 30. The government offered to dismiss Counts One, Two, Five, and Six against the petitioner in exchange for a plea of guilty to Counts Three and Four—the § 924(c) charges. The petitioner claims Attorney Johnson advised him that the government's offer was to "plead guilty to Counts [Three] and [Four] . . . in exchange for a mandatory minimum sentence of 30 years." ECF No. 134-1 at 3 (punctuation omitted). The petitioner asserts that if Attorney Johnson had advised him correctly, he "would have most certainly accepted the government's offer" and,

as a result, would not have been convicted on four of the six counts and may have received a lesser sentence. *Id.* at 4.

"Counsel's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance." *United States v. Carthorne*, 878 F.3d 458, 466 (4th Cir. 2017) (quotation marks and citations omitted). In the context of plea negotiations, the prejudice prong under *Strickland* is established when the petitioner shows "that but for the ineffective assistance of counsel, there is a reasonable probability that [they] would have accepted a plea, that the court would have approved its terms, and that the resulting conviction or sentence would have been less severe than that actually imposed." *Mayhew*, 995 F.3d 171, 177 (4th Cir. 2021) (quotation marks and citation omitted); *see also United States v. Muhammad*, 478 F.3d 247, 249 (4th Cir. 2007) (finding prejudice where, absent counsel's error, "the court might have imposed a reduced sentence") (quotation marks and citation omitted).

The petitioner fails to establish deficiency because, even if Attorney Johnson misadvised him at some point, it is more likely than not that counsel conveyed the government's plea offer accurately. At the hearing, the petitioner testified that "[w]hen [he] first met Attorney Johnson . . . [counsel] told [him] that the [§] 924(c) counts, Count Three and Count Four, carried a mandatory minimum of 30 years collectively; five for the first one and 25 on the second count." ECF No. 175 at 12:18–23. The Court is not sure whether Attorney Johnson advised the petitioner correctly

11

during their first meeting. It is possible that, because the First Step Act was enacted so shortly before the petitioner was indicted, Attorney Johnson could have believed at the outset of his representation of the petitioner that the § 924(c) charges still carried a combined minimum sentence of 30 years and advised the petitioner accordingly.[5] But the petitioner acknowledges that "[i]t wasn't until after [the] suppression hearing . . . in July" that the petitioner "asked" counsel whether there was "any offer." *Id.* at 13:22–24. And the Court has objective evidence that at least at that point, Attorney Johnson understood that Counts Three and Four carried a combined minimum of 10 years. *See* ECF No. 141-1 at 3.

The government conveyed its plea offer to Attorney Johnson by email on July 26, 2019. ECF No. 141-1 at 3. That email correctly—and repeatedly—framed the mandatory minimum sentences for two § 924(c) convictions obtained in the same case:

> [T]he government's offer is for [the petitioner] to plead guilty to Counts 3 & 4 of the Indictment—the two [§] 924(c) [c]ounts. The government will dismiss Counts 1, 2, 5, & 6.
>
> My conservative calculations . . . of the guidelines puts [the petitioner] at an offense level of 15 and a criminal history of III[,] which means he would be looking at 24–30 months in addition to the *10 years.*
>
> Changing his plea to guilty would result in a three[-]point reduction . . . dropping his guidelines to 15–21 months in addition to the *10 years.* Also, it is possible . . . that the Court sentence[s] [the petitioner] to *10 years* and a day if

---

[5] Such an error would not, standing alone, amount to deficient performance. *Carthorne* leaves space for a lawyer who "perform[s] . . . research" to rectify their "ignorance of a point of law." 878 F.3d at 466.

> he changes his plea. Such leniency would be unlikely post
> a jury trial conviction[,] and it is probable in that case that
> [the petitioner] would receive the full 30 months of his
> guidelines plus the *10 years*. *10 years* is better than almost
> 13.

*Id.* (emphasis added). On July 27, 2019, Attorney Johnson responded to ask whether

the government would "argue 10 years and a day is sufficient." *Id.* At that point,

counsel clearly understood that a sentence of "10 years and a day" on Counts Three

and Four was possible—that is, the law did not mandate a sentence of 30 years. *Id.*

He then relayed the plea offer to the petitioner on July 28, 2019. *See* ECF No. 141-1

at 2 (July 29 email from Attorney Johnson, stating that he "spoke with [his] client

yesterday" and that the petitioner would be "going to trial").[6] Because counsel did

not relay the offer until after he demonstrated in writing that he understood the

mandatory minimums correctly, the Court concludes that Attorney Johnson

accurately appreciated the law as it applied to the petitioner, at least at the time

that matters for purposes of the motion to vacate.

The petitioner claims that Attorney Johnson advised him incorrectly as to the

mandatory minimums during their first meeting, then did not correct that

information when he relayed the plea offer. But because the Court finds that

Attorney Johnson understood the law correctly at the time he conveyed the offer to

---

[6] At the hearing on the § 2255 petition, the parties disputed the date when Attorney
Johnson relayed the government's plea offer to the petitioner and whether the two
met in person or spoke on the phone. These facts ultimately have little bearing on
the outcome of Ground One, because it is undisputed that Attorney Johnson did relay
the government's offer in some form but that he did not show the petitioner a copy
of the government's email.

the petitioner and had discussed the minimum sentence explicitly in writing, it is more likely than not that he conveyed the offer completely—including the fact that it carried a mandatory minimum of 10 years.

The record from the petitioner's sentencing—and his later testimony about that proceeding—confirm that the petitioner was advised accurately. The petitioner testified that during the sentencing hearing, he had concerns about Attorney Johnson's representation but elected not to share them with Judge Doumar when prompted to do so. ECF No. 175 at 14:19–25. The transcript of the sentencing hearing confirms that Judge Doumar asked whether there was "anything . . . incorrect in the Presentence Report" ("PSR"), and the petitioner responded that he had "questions" but that he would "trust [his] attorney." ECF No. 87 at 3:5–12.

During the § 2255 hearing, the Court initially understood the petitioner to be asserting that when he received the PSR, he learned for the first time that each § 924(c) conviction carried a minimum sentence of five years, but that he chose not to raise the issue with Judge Doumar, because the petitioner believed he was receiving a benefit as compared to what he expected (*i.e.*, a five-year minimum on the second § 924(c) conviction instead of 25 years). *See* ECF No. 175 at 16:6–9 (the Court asking the petitioner whether, "[a]t the time of [his] sentencing," he was for the first time "made aware that . . . that each [§ 924(c) count] carried a five-year mandatory minimum sentence"). But a careful review of the petitioner's testimony reveals that his confusion at the sentencing hearing was actually founded on his belief that Judge Doumar was improperly stacking the § 924(c) counts—which, the

petitioner has since learned, was based on a misunderstanding of the term. *See id.* at 15:8–10, 15:12–24, 34:3–10.

The Court asked whether the concerns the petitioner had at the time of sentencing were "about the stacking issue or about something else." ECF No. 175 at 15:8–10. The petitioner responded:

> I'm under the impression that I'm looking at more time than what I actually was looking at. And then [Attorney Johnson] is saying that I'm not being stacked, I guess at this point because it was five and five. I don't know the difference from stacking meaning five and 25 or two separate consecutive 924s, and he's saying, no, you're not being stacked.
>
> I'm still thinking at this point that I'm being stacked because it was all so new. People just sharing stuff with me -- you know, we in the jail asking different questions and different advice, helping each other. So it was just that kind of thing. I didn't know what I would actually have said. However, I know I wasn't -- I didn't have the correct understanding of stacking.

*Id.* at 15:12–24. Then on cross-examination, the petitioner again explained that he had been concerned that the § 924(c) convictions were improperly stacked:

> I don't know if you remember, Mr. Osyf, but I kind of was whispering back and forth to Mr. Johnson that whole proceeding, that whole sentencing, because I was still trying to figure out—I was still under the impression that the 924(c)s was stacked, even though they was—because they was separated. I didn't really understand the stacking provision, you know. It was all, you know, new intervening changes of law.

*Id.* at 34:3–10.

The Court gleans two critical pieces of information from these two passages: First, at the time of sentencing, the petitioner was aware that the law had changed,

and multiple § 924(c) convictions in the same case were no longer supposed to be 'stacked.' Even though it appears he erroneously believed that meant a defendant could not receive separate sentences for two such convictions in the same case, the essential point here is that the petitioner had been advised—by someone—that stacking was gone. Second, the petitioner was concerned that his sentences on Counts Three and Four *were* being stacked. If, as the petitioner alleges in his § 2255 motion, he believed up until sentencing that he faced a combined mandatory minimum sentence of 30 years on Counts Three and Four, then he should have been concerned when he saw that the PSR reflected a combined minimum of just 10 years—meaning he had rejected the government's plea offer based on a misapprehension of the law. But instead the petitioner was worried about the multiple convictions under § 924(c). A close reading of the record reflects that it was a misunderstanding about what "stacking" meant—not inaccurate advice about the mandatory minimums—that animated the petitioner's concern at the sentencing hearing. Therefore, it is clear to the Court that the petitioner was correctly advised that the First Step Act eliminated stacking under § 924(c), and Attorney Johnson's performance was not deficient on this ground.

The petition also fails to establish prejudice, because it is more likely than not that the petitioner would have rejected the government's offer regardless of whether counsel conveyed its terms fully and accurately. The petitioner alleges, in part, that he rejected the government's plea offer because he believed it carried a mandatory minimum sentence of 30 years. *See* ECF No. 134-1 at 4 ("Had attorney Johnson

16

informed [me] that the government's plea offer . . . only carried a mandatory minimum sentence of (10) years . . . [I] would have most certainly accepted the government's offer.") However, the petitioner also states:

> [Attorney] Johnson advised me not to accept a plea offer like the one being offered, but instead to proceed to trial because the government had no primary evidence to support its theory of drug conspiracy with petitioner's passenger status in a vehicle he did not own, no DNA or fingerprints related to petitioner on any contraband, nor any proof of knowledge or possession of either guns or drugs.

*Id.* at 3. The latter theory—that the petitioner rejected the government's offer because counsel advised him that he had a viable defense—is more consistent with the totality of the evidence. Indeed, the petitioner admits that "the only reason [he] rejected the plea offer and proceeded to trial was because of *[A]ttorney Johnson's advice*"—not because the petitioner believed the offer itself was not good enough, based on a misapprehension about the mandatory minimum sentence. *Id.* at 4 (emphasis added).

Attorney Johnson told the Court that he advised the petitioner to accept the government's plea offer. ECF No. 175 at 49:10–11. But counsel also recalled that the petitioner was motivated to go to trial regardless of the plea offer:

> **Q.** And did [the petitioner] ever express to you wishing to take a plea?
>
> **A.** No. Absolutely -- no, no, no, not ever. [He] wanted to go to trial. No.
>
> **Q.** And did you—
>
> **A.** He never expressed that he would take something, no.

17

ECF No. 175 at 48:8–12.

Both the petitioner and Attorney Johnson present internally conflicting accounts of the reason for rejecting the plea offer. To assess the credibility of these accounts, the Court has considered all the evidence before it regarding the petitioner's goals and motivations at the time he received the government's plea offer. On one hand, the petitioner testified that he "asked" Attorney Johnson about a plea offer "after" they had lost on the motion to suppress. ECF No. 175 at 13:22–24. That suggests that the petitioner understood the risks trial posed and wanted to negotiate with the government. Indeed, the petitioner testified that he had been charged with crimes before this case and had always accepted plea offers, which supports the contention that he would have been willing to accept a favorable plea if it were presented to him. ECF No. 175 at 13:24–14:1. On the other hand, the way the petitioner responded when Attorney Johnson relayed the offer—by the petitioner's own account—is not entirely consistent with the theory that the petitioner was motivated to resolve the case with a guilty plea and was deterred only because he incorrectly believed that plea would expose him to a mandatory minimum of 30 years.

The petitioner described a very brief conversation in which Attorney Johnson told him the offer was to plead guilty to Counts Three and Four, and the petitioner rejected the offer without further discussion.[7] If the issue in the petitioner's mind

---

[7] The petitioner initially testified that he "asked [counsel whether] Counts Three and Four [were] the mandatory minimum 30 years, and counsel "said" that was "correct."

truly had been that the government's offer as he understood it presented no real benefit, ECF No. 175 at 33:13 (petitioner stating his view that the government's offer left him "no choice")—that is, if the petitioner had actually wanted to negotiate a plea agreement but the first offer was not good enough—then the Court would expect there to have been some discussion about a counteroffer. But it is undisputed that after Attorney Johnson conveyed the government's offer, there was no further conversation between the petitioner and his lawyer about the offer and no negotiation between Attorney Johnson and the government about the possibility of a better one.

This increases the likelihood that the petitioner was motivated by something other than the terms of the plea offer or the minimum sentence he would face if he accepted. And that makes sense: The petitioner had a reasonably strong defense. He was charged with possessing drugs and guns that were found under the driver-side

---

ECF No. 175 at 14:5–7. But later on cross-examination, the government clarified whether the petitioner actually asked Attorney Johnson if the plea offer was for "30 years." ECF No. 176 at 33:9–10 (SEALED). The petitioner responded, "No," explaining that he was merely "under the impression that" the plea would carry a minimum of 30 years. *Id.* at 33:11–13.

> **Q.** So you didn't say that to Mr. Johnson?
>
> **A.** No.
>
> **Q.** You didn't ask him what you would be facing or anything?
>
> **A.** No, sir. We never got into . . . a conversation that detailed.

*Id.* at 33:14–18.

seat of a vehicle in which he was a passenger. And his co-defendant, the driver—the only other person who might have had direct evidence of whether the petitioner knew those items were there—was not going to testify. It would have been reasonable for the petitioner to decline *any* offer the government made so that he could present that defense to a jury.

Viewing all the evidence together, the Court credits the petitioner's assertion that Attorney Johnson advised him to decline the government's offer and that he followed that advice because he believed the government's evidence had problems that could be exploited at trial. *See* ECF No. 134-1 at 3. Therefore, even if counsel had misadvised the petitioner about the terms of the offer, the petitioner has not shown "a reasonable probability that he would have accepted the[] plea" on its actual terms. *Mayhew*, 995 F.3d at 179. Because the petition demonstrates neither deficiency nor prejudice with regard to the plea negotiations, the motion will be **DENIED** as to Ground One.

### ii.   Grounds Two, Three, Four, Five, and Twelve: The Suppression Motion

The petitioner raises five concerns involving the suppression motion and related hearing. In Ground Two, he alleges "there was never any probable cause to search" the vehicle and that Attorney Johnson "was ineffective for not rebutting the officer's testimony" about probable cause, by calling the petitioner as a witness at the suppression hearing. ECF No. 134 at 7. In Ground Three, the petitioner alleges that Attorney Johnson was ineffective for failing to "investigate the arresting officer for any form of misconduct, unprofessional conduct, or . . . complaints." *Id.* at 8.

Ground Four asserts that counsel should have played the complete video from the arresting officer's body-worn camera during the suppression hearing. *Id.* at 9. In Ground Five, the petitioner claims that Attorney Johnson "failed to . . . preserve a suppression issue" because he did not "file a notice of appeal to the suppression decision." ECF No. 125 at 10. In Ground Twelve, the petitioner claims that his attorneys' alleged ineffectiveness "deprived" him of the Fourth Amendment's "protections against illegal search and seizure." *Id.* at 17. Because the petitioner fails to establish either deficiency or prejudice for any of these grounds, the motion will be denied as to issues related to the suppression motion. *See Strickland*, 466 U.S. at 692.

### a.    *Ground Two: Testimony at the Suppression Hearing*

The right of a defendant in a criminal case to testify in their own defense "reaches beyond the [] trial," and the Fourth Circuit has implicitly recognized that a defendant has a Fifth-Amendment right to testify at a pretrial hearing. *Rock v. Arkansas*, 483 U.S. 44, 51 n. 9 (1987); *see United States v. Rashaad*, 249 Fed. App'x 972, 972–73 (4th Cir. 2007) (unpublished) (remanding for consideration of a petitioner's § 2255 claim that he was prevented from testifying at a pretrial hearing on a motion to dismiss the indictment) (citing *Reinert v. Larkins*, 379 F.3d 76, 95 (3d Cir. 2004) (considering habeas petitioner's claim based on right to testify at pretrial suppression hearing)). Assuming without deciding that the petitioner had such a right, he fails to establish that counsel was ineffective for failing to call him as a witness at the suppression hearing.

The petitioner asserts that he "was willing to testify" at the suppression hearing that he did not smell any marijuana in the vehicle, which "would have rebutted" the testimony of the arresting officer that the smell of marijuana gave him probable cause to search. ECF No. 134-1 at 6. However, the petitioner never claims that he told Attorney Johnson that he wanted to testify, much less that Attorney Johnson denied him that right. Therefore, the petitioner fails to establish that counsel's representation was deficient because he failed to call the petitioner as a witness.

The petitioner also fails to establish actual prejudice, because he does not explain how his proposed testimony would have changed the outcome of the suppression hearing. Most importantly, the petitioner does not dispute that the government's assertion that body-worn camera footage would confirm that the petitioner and his co-defendant both made statements at the scene that corroborated the officer's testimony about the smell of marijuana. *See* ECF No. 86 at 37. Therefore, the Court cannot conclude that there is a "reasonable probability" Judge Doumar would have credited the petitioner's testimony over the arresting officer's and therefore granted the motion to suppress. *Strickland*, 466 U.S. at 694.

> b.    *Ground Three: Investigation into the Arresting Officer*

The petition does not establish that counsel's failure to investigate the officer's background was deficient, because it provides no evidence that counsel should have been prompted to undertake such an investigation. *See, e.g., Covington v. United States*, 2015 WL 6553861, at *4 (W.D.N.C. Oct. 29, 2015) (finding that the petitioner

failed to prove deficiency where he alleged that counsel was ineffective for not investigating arresting officers, but the petitioner "present[ed] no evidence showing that . . . an investigation of the arresting officers . . . would have uncovered any evidence of misconduct"). For example, the petitioner does not identify any specific misconduct on the arresting officer's part during the search that might have led Attorney Johnson to seek evidence of similar misconduct in the past, nor does he point to any specific mistreatment by the officer that might have indicated animus. Without any indication that Attorney Johnson had a reason to investigate the officer's background, the Court cannot conclude that counsel's representation was deficient because he failed to undertake such an investigation.

Additionally, the petitioner fails to establish prejudice, because he does not explain what misconduct would have been discovered if counsel had investigated the arresting officer or how evidence of such misconduct would have affected Judge Doumar's decision on the motion to suppress. It is true that the Judge's decision that the search was reasonable depended on his assessment that the officer's testimony about the smell of marijuana was credible. Though evidence of prior misconduct by a witness can affect a court's assessment of that witness's credibility, critically, the petitioner does not dispute that the officer was truthful about any specific fact that formed the basis for Judge Doumar's determination that the search was based on probable cause.[8] The petitioner states that he "told [A]ttorney [] Johnson that the

_____

[8] In a separate part of his motion, the petitioner asserts that, if he had testified at trial, he would have said "there was no marijuana smoke or anyone who smelled of it." ECF No. 134 at 16. Recognizing that the petitioner filed his motion *pro se*, the

officer wasn't being truthful," but the petition does not explain which fact or facts the officer allegedly got wrong. ECF No. 134-1 at 6. Therefore, the Court cannot conclude that the outcome of the proceeding would have been different had Attorney Johnson impeached the credibility of the arresting officer with evidence of prior misconduct, if such conduct existed.

### c.   Ground Four: Body-Worn Camera Video

At the suppression hearing, the government represented—and the petitioner does not dispute—that the un-played portion of the video showed the petitioner making statements to the arresting officer that corroborated the officer's testimony that he smelled marijuana when he approached the vehicle. ECF No. 86 at 37:4–13. Thus, Attorney Johnson's choice not to play those portions of the video for the Judge would certainly fall within the scope of "reasonable strategy." *Massaro*, 538 U.S. at 505. Therefore, the petitioner does not prove deficiency as to Ground Four.

The petitioner also fails to prove prejudice, because he does not identify how the un-played portion of the video would have changed Judge Doumar's conclusion

---

Court has construed this allegation liberally and considered whether it could meet the petitioner's burden on Grounds Two or Four. The petitioner does not dispute that he told the arresting officer the former passenger might have smelled like marijuana; nor does the petitioner dispute that his co-defendant told the arresting officer the person she had dropped off earlier *did* smell like marijuana; nor does the petitioner dispute the government's allegation that the un-played portion of the body cam video would have confirmed both of those statements. Therefore, in order to find that calling the petitioner to testify at the suppression hearing (Ground Two) or playing the video in its entirety (Ground Four) would have changed Judge Doumar's decision on the motion to suppress, the Court would have to conclude that Judge Doumar might have believed the petitioner's testimony about the smell of marijuana over the cumulative weight of the arresting officer's testimony, the co-defendant's pre-arrest statement, and the petitioner's own pre-arrest statement. The Court does not so find.

that the arresting officer had probable cause to search the vehicle because he smelled marijuana. Obviously, the video would not reveal the presence or absence of the alleged smell itself. But importantly, as explained in Part III.A.ii.1. above, the petitioner does not dispute that the video would confirm he made the statement the officer testified that he made: that a previous passenger in the vehicle may have smelled like marijuana. *See* ECF No. 86 at 37:10–13; *see also* n.1, *supra*. The "vague and conclusory" allegation that playing the video "in totality" would have "rebut[ted]" the government's evidence and "give[n]" the defense "a better []" argument" does not suffice to establish that the outcome of the suppression hearing would have been different had Attorney Johnson played the entire video. *Dyess*, 730 F.3d at 359; ECF No. 134 at 9.

### d.   Ground Five: Preservation of an Appeal on the Motion to Suppress

The petitioner appears to assert that he asked Attorney Johnson to file an interlocutory appeal from Judge Doumar's denial of the motion to suppress, and Attorney Johnson did not do so. ECF No. 134 at 10; *see* ECF No. 125 at 10 (referencing "pretrial counsel," not appellate counsel); *but see* ECF No. 134 at 10 (referencing "petitioner's counsel" in general). If that is the petitioner's claim, it fails under both prongs of *Strickland*, because counsel would not have been permitted to file such an appeal—the petitioner would have had to wait until trial was over, then appeal from the court's final decision. *Cogen v. United States*, 278 U.S. 221, 227–28 (1929) (holding that denial of a defendant's pretrial motion to suppress is not a final order of the district court and therefore is not appealable until after the case

concludes); *e.g., United States v. Miller*, 794 F. App'x 297 (4th Cir. 2020) (unpublished) (dismissing defendant's interlocutory appeal from a motion to suppress and transfer).

If instead the petitioner intends to direct Ground Five to appellate counsel's representation, claiming that Attorney Bodner should have appealed Judge Doumar's denial of the motion to suppress, then the petition still fails under both *Strickland* prongs, because such an appeal could not have succeeded. Judge Doumar's denial of the motion "was ultimately based on [a] credibility determination[]." *United States v. Daniels*, 308 F. App'x 658, 660 (4th Cir. 2009) (unpublished); *see* ECF No. 86 at 38 (relying solely on the arresting officer's testimony). Therefore, the Fourth Circuit would not have reversed the decision. *Daniels*, 308 F. at 600 (explaining that such credibility determinations "are not subject to appellate review"); *see United States v. Sanders*, 886 F.2d 56, 60 (4th Cir. 1989) (appellate court was "bound by the credibility choices of the [factfinder]") (quotation marks and citation omitted). Whether Ground Five is directed at Attorney Johnson's representation, Attorney Bodner's, or both, the petition fails under the *Strickland* standard. *See* 466 U.S. at 690; ECF No. 134 at 9.

      e.    *Ground Twelve: Fourth Amendment Rights Generally*

A federal habeas petitioner may raise a Fourth-Amendment issue when counsel "fail[ed] to make a timely request for the exclusion of illegally seized evidence." *Kimmelman*, 477 U.S. at 379. But if the petitioner was already "provided a full and fair opportunity to litigate" the suppression issue, "he cannot re-litigate

[it] in a motion pursuant to § 2255 unless there has been an intervening change in law." *United States v. Schulte*, 230 F.3d 1356 (4th Cir. 2000) (unpublished) (citations omitted); *see Stone v. Powell*, 428 U.S. 465, 482 (1976) (creating this rule in the context of state habeas review under 28 U.S.C. § 2254); *United States v. Johnson*, 457 U.S. 537, 563 n.20 (1982) (recognizing that the same rule applies to "analogous federal cases under 28 U.S.C. § 2255"), *abrogated on other grounds by Griffith v. Kentucky*, 479 U.S. 314, 107 (1987). Here, Attorney Johnson "ma[d]e a timely request" to exclude the evidence the petitioner claims was seized in an unconstitutional search of the vehicle. *Kimmelman*, 477 U.S. at 37; *see* ECF No. 26 (motion to suppress). Briefing on the motion to suppress and the hearing before Judge Doumar provided the petitioner a "full and fair" opportunity to litigate the issue. *Stone*, 428 U.S. at 482. And the petitioner does not contend that there was in intervening change in the law. Therefore, Ground Twelve fails.

Because the petitioner fails to demonstrate deficiency and prejudice as to any of his claims related to the motion to suppress, the § 2255 motion will be **DENIED** as to Grounds Two, Three, Four, Five, and Twelve.

### iii.    *Ground Six: Jury Selection*

In Ground Six, the petitioner alleges that Attorney Johnson was ineffective for failing to strike a particular juror after learning the juror was a cousin of the courtroom security officer but had failed to answer any questions during *voir dire*. ECF No. 134 at 12–14. This ground cannot succeed because the petitioner does not establish that Attorney Johnson's choice not to strike the juror was less than a

reasonable strategy or that the individual's presence on the jury prejudiced the outcome of the trial. *See Strickland*, 466 U.S. at 692.

Judge Doumar asked the venire: "Have you or any member of your immediate family been employed by a law enforcement agency or by an office or organization that renders services to persons charged with criminal offenses?" ECF No. 84 at 20:23–21:1. The juror in question—Juror No. 29—did not respond. *Id.* at 21:3–6. After *voir dire* but before the jury was empaneled, the courtroom security officer informed Judge Doumar that Juror No. 29 was his cousin and that Juror No. 29 was "a security officer." *Id.* at 87:12–15. Attorney Johnson moved to strike Juror No. 29 "for not answering" the law-enforcement question. *Id.* at 87:24–25.

However, upon questioning by the Court, Juror No. 29 explained that he was a private security guard employed with Newport News Shipbuilding and that he believed his cousin worked in law enforcement "before" but was "in a different capacity" as a courtroom security officer. ECF No. 84 at 88:16–20, 89:10–17. Attorney Johnson asked Juror No. 29 "why [he] didn't raise [his] hand," and Juror No. 29 said he "probably didn't totally understand the question when it was asked." *Id.* at 89:19–22. After hearing that explanation, Attorney Johnson did not re-raise his motion to strike, and Juror No. 29 was ultimately seated. *Id.* at 90:5–7, 105:1.

An attorney's failure to strike a prospective juror is not deficient under *Strickland* unless the juror in question is proved to have been actually biased against the petitioner. *See Haight v. Jordan*, 59 F.4th 817, 834 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 578 (2024) (petitioner could not "establish his trial counsel's performance

was objectively unreasonable" for failing to strike a juror where the petitioner failed to prove "that [the juror] was actually biased against him"). Because the petitioner offers no proof that Juror No. 29 was actually biased against him, he cannot establish deficiency. Additionally, given how quickly the jury returned a verdict, the Court cannot conclude there is a "reasonable probability that . . . the result of the proceeding would have been different" if Juror No. 29 were not seated. *Strickland*, 466 U.S. at 694; *see* ECF No. 85 at 154:5–6, 156:20–24 (reflecting less than one hour of deliberation); *Canfield v. Lumpkin*, 998 F.3d 242, 249 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 2781 (2022) ("[T]here is no reasonable probability that, but for [an unobjected-to juror's] presence, the jury—who deliberated . . . for less than an hour— would have acquitted." Therefore, the petitioner fails to establish either prong under *Strickland*, and the motion must be **DENIED** as to Ground Six.[9]

### iv. *Ground Seven: Petitioner's Right to Testify*

In Ground Seven of his written motion, the petitioner alleges that Attorney Johnson "did not advise him of his right to testify at trial." ECF No. 134 at 16. In the hearing on the motion, the petitioner said the opposite:

---

[9] The petitioner is also concerned that the prospective juror stayed in the courthouse after proceedings concluded on the first day of trial and, on the second day of trial, rode the elevator with the petitioner's co-defendant. ECF No. 134-1 at 9. If this is intended as a separate ground, it fails under both prongs of *Strickland*. The petitioner does not assert that the individual attempted to interfere with the trial. Therefore, counsel had no obligation to object to his presence in the courthouse, and failure to do so does not amount to deficiency. And without proof of interference, the Court finds no indication that the person's presence—or Attorney Johnson's failure to object to it—affected the outcome of the trial at all.

> THE COURT: Did Mr. Johnson advise you that you had a
> right to testify?
>
> THE [PETITIONER]: He did.

ECF No. 175 at 28:16–18. In the written motion, the petitioner also alleges that
counsel "coerced [him] not to testify," even though the petitioner "repeatedly
requested to do so." ECF No. 134 at 16. But at the hearing, the petitioner disavowed
that allegation as well, adopting instead the view that counsel merely advised him
not to testify and that such advice was strategic:

> THE COURT: You said . . . that Mr. Johnson coerced you
> not to testify. How do you believe he did that?
>
> THE [PETITIONER]: . . . . He said there's no way I was
> getting on the stand . . . . And recently, I actually went
> back to this . . . ground, and [I've] seen that, in most cases,
> that it's a tactical decision from the defense counsel. So at
> that point, even though I still have my argument, and I
> still believe that if the jury would have at least heard the
> truth of the story . . . it could possibly have made a
> difference . . . [i]f Attorney Johnson believed that it was
> tactical not to put me as his client on the stand, then I
> would have to go with that[.]

ECF No. 175 at 29:3–21. Because the petitioner now acknowledges he was advised
whether to testify was his own choice, and that counsel's advice that he should not
testify was "supported by a reasonable strategy," *Massaro*, 538 U.S. at 505, the
petitioner concedes on the deficiency prong. The motion will be **DENIED** as to
Ground Seven.[10]

---

[10] Ground Seven also fails under the prejudice prong, because the petitioner does not
demonstrate a "reasonable probability" that the jury would have believed his
uncorroborated statements over the statements of the arresting officer, such that
"confidence in the outcome" of the trial is undermined. *Strickland*, 466 U.S. at 687.

### v.    Ground Eight: Verdict Form

In Ground Eight, the petitioner alleges that Attorney Johnson "[f]ailed to object to the court submitting a defective and generic verdict form." ECF No. 125 at 13. The motion asserts that the verdict form should have required the jury to indicate "which predicate offense [it] relied on for the [§] 924(c) conviction" and "whether [the jury] found [the] petitioner guilty of violating [§] 924(c) as a principal, aider and abettor, or co-conspirator." ECF No. 134 at 22. But in the Fourth Circuit, a special verdict form is not required when a defendant is charged with violating 18 U.S.C. § 924(c) under multiple theories. *United States v. Mingo*, 237 F. App'x. 860, 867 (2007) (unpublished). Juries are "allowed . . . to return a general verdict on a count alleging two separate crimes so long as the defendant is sentenced only on the lesser crime." *Id.* Here, like in *Mingo*, the crime of conviction carried the same sentence regardless of the theory of liability. *Id.* Therefore, even though "it is impossible to determine what theory the jury relied on to find guilt," ECF No. 134 at 22, the verdict form was not defective. *Mingo*, 237 F. App'x at 867 ("Thus, although it is impossible to ascertain the precise violation of § 924(c) the jury found [the defendant] to have committed, a special verdict form was not required . . . ."). Accordingly, counsel had no obligation to object to the verdict form, and the outcome of trial could not have been different if he had objected. Therefore, this claim fails under both prongs of *Strickland*.

The petitioner next expresses concern that the verdict form "did not incorporate the indictment nor the jury instructions" and contained no "descriptions of the counts." ECF No. 125 at 23. The petitioner also fails to establish deficiency or

prejudice here. The Court has reviewed the verdict form (ECF No. 39) and finds that it comports with the typical forms in criminal cases. In fact, if the verdict form *had* "incorporated the indictment [or] the jury instructions" or expounded on the counts as the petitioner describes, that would have been quite unusual. ECF No. 125 at 23. Therefore, it cannot have been "below [the] objective standard" of "prevailing professional norms" for counsel not to object to the verdict form on those grounds. *Strickland*, 466 U.S. at 688. Moreover, the petitioner does not allege how a different verdict form would have created a "reasonable probability" of a different result—and the Court is at loss to see how it would, since the jury was instructed on the law before it deliberated. *Id.* at 694; *see* ECF No. 85 at 293:9–332:22 (jury instructions). Because the petitioner fails to meet his burden on both claims asserted under this ground, the motion will be **DENIED** as to Ground Eight.

### vi.    *Ground Nine: Jury Instructions*

In Ground Nine, the petitioner appears to raise three concerns related to the fact that he "was charged and convicted of two offenses with regards to the same cocaine." ECF No. 134 at 24. First, he claims that the Double Jeopardy Clause of the Fifth Amendment bars convictions for both possession of cocaine and conspiracy to distribute cocaine. *Id.* at 25. Second, he asserts that Judge Doumar should have "merged" the possession and conspiracy to distribute convictions "for sentencing purposes." *Id.* at 26. Third, he claims that he was entitled to have the jury instructed

on a lesser-included offense. *Id.* at 25–26.[11] The petitioner asserts that Attorney Johnson was ineffective for failing to object on these three grounds. The petition fails to establish either prong of *Strickland* as to Ground Nine, because his claims are based on a misunderstanding of the law.

The Fifth Amendment's Double Jeopardy Clause prevents an individual from being tried for "the same offense" more than once by the same state (or more than once by the federal government). U.S. Const. amend. V; *see Currier v. Virginia*, 585 U.S. 493, 498 (2018). The Double Jeopardy Clause does not apply in this case, because Counts One and Two did not charge the same offense.

Whether two crimes are "the same offense" for double-jeopardy purposes depends on whether "each provision requires proof of an additional fact which the other does not." *Brown v. Ohio*, 432 U.S. 161, 166 (1977) (quotation marks and citations omitted); *United States v. Hall*, 551 F.3d 257, 267 (4th Cir. 2009). Conspiracy to possess with intent to distribute cocaine (Count One) is different from possession with intent to distribute cocaine (Count Two): A person can conspire to

---

[11] The petitioner also states that "the District Court erred in imposing on petitioner separate [§] 924(c) sentences related to Counts One and Two of petitioner's indictment." *Id.* at 26–27. This allegation is unclear. Besides this one statement, Ground Nine deals entirely with Counts One and Two—the charges related to cocaine. Therefore, it seems to the Court that the petitioner intends to allege that Judge Doumar should have given him one sentence for the two cocaine-related convictions combined. If that is correct, then the Court's discussion of Double Jeopardy and merger, in this section of the Opinion and Order, addresses the petitioner's argument. Alternatively, if the petitioner intends to say that Judge Doumar should have given him a single sentence for both *gun* convictions under § 924(c) (Counts Three and Four), that argument is addressed by the Court's explanation of 'stacking,' in Part III.A.i., above.

possess with intent to distribute cocaine without actually possessing any cocaine, and someone can possess cocaine with intent to distribute it without conspiring with another person. Because the two crimes require different proof, the fact that the "same cocaine" was evidence of both crimes in this case does not render Counts One and Two identical. ECF No. 134 at 24; *see Brown*, 432 U.S. at 166 ("a substantial overlap in the proof offered" is not enough to establish that two offenses are the same) (quoting *Iannelli v. United States*, 420 U.S. 770, 785 n.17 (1975)). Therefore, the petitioner's trial on Counts One and Two did not violate the Double Jeopardy Clause, and counsel was not ineffective for failing to raise a double-jeopardy issue.

When a person is convicted of two offenses, where one is a lesser-included offense of the other, those two offenses must be merged for purposes of sentencing. *United States v. Shorter*, 328 F.3d 167, 173 (4th Cir. 2003). But possession with intent to distribute cocaine is not a lesser-included offense of conspiracy to possess with intent to distribute cocaine. *States v. Horn*, 946 F.2d 738, 744 (10th Cir. 1991) (cited in *United States v. Como*, 108 F.3d 1373 (4th Cir. 1997)). Therefore, Judge Doumar was not required to merge Counts One and Two. *Iannelli*, 420 U.S. at 777–78 ("[T]he conspiracy to commit an offense and the subsequent commission of that crime normally do not merge into a single [crime]."); *United States v. Ruhbayan*, 406 F.3d 292, 300 (4th Cir. 2005) (same). As a result, Attorney Johnson was not ineffective for failing to request that the Judge merge the two offenses for purposes of sentencing.

The petitioner does not specify what lesser-included-offense instruction he believes the jury should have been given. And he would not have been entitled to such an instruction about possession with intent to distribute cocaine because, as the Court explained above, possession with intent to distribute is not a lesser-included offense of conspiracy to possess with intent to distribute.

The petitioner may have been entitled to an instruction on possession of cocaine, as a lesser-included offense of possession with intent to distribute. *See United States v. Baker*, 985 F.2d 1248, 1259 (4th Cir. 1993) ("a lesser-included possession instruction in drug distribution cases . . . is required if requested unless, as a matter of law, the evidence would rule out the possibility of a finding of simple possession"). However, the petitioner does not dispute the obvious explanation that leaving out that instruction was a "strateg[ic]" choice. *Massaro*, 538 U.S. at 505. At trial, Attorney Johnson advanced the theory that the petitioner did not constructively possess the cocaine found under his co-defendant's seat, because the petitioner did not know the drugs were there. *See* ECF No. 85 at 91:1–101:10 (closing argument). Suggesting to the jury that they could convict the petitioner on simple possession instead of possession with intent to distribute would have contradicted that theory. *See id*. at 94:9–10 (stating that the petitioner lacked knowledge of the drugs and that in order to prove "possession of something, first you have to have knowledge"). Thus, it would have been a "reasonable strateg[ic]" decision for counsel to not request the instruction on the lesser-included offense. *See Massaro*, 538 U.S. at 505. Therefore, the petition fails to establish deficiency on this claim. *See Berry v.*

*United States*, 884 F. Supp. 2d 453, 460 (E.D. Va. July 29, 2012) (deficiency not proved when counsel failed to request a lesser-included-offense instruction on possession, where the "instruction would have run counter to [the] [p]etitioner's theory of the case at trial, which was that [the] [p]etitioner never possessed the [drugs] at all").

Furthermore, the petitioner fails to establish actual prejudice because he does not point to any facts that would have led the jury to convict on the possession instead of possession with intent (or to acquit on any count) had they been instructed that they could do so. *See Strickland*, 466 U.S. at 694. Because the petitioner fails to prove any of his claims under either prong of *Strickland*, the motion will be **DENIED** as to Ground Nine.

### vii.   *Ground Ten: The Indictment*

In Ground Ten, the petitioner claims that Attorney Johnson was ineffective for failing to challenge the Indictment, which omitted an essential element of the charges under 18 U.S.C. § 922(g). ECF No. 134 at 28. In *Rehaif v. United States*, 588 U.S. 225, 237 (2019), the United States Supreme Court held that "in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the [g]overnment must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." The petitioner was indicted on two counts under § 922(g)(1) just 37 days before *Rehaif* was handed down, so the indictment did not allege that the petitioner knew he had been convicted of a felony. ECF No. 1 at 4. But an attorney's performance cannot be deficient for failure to object

on the basis of law that does not yet exist. *See Ramos v. Louisiana*, 140 S. Ct. 1390, 1420 (2020) (". . . the Courts of Appeals have consistently held that an attorney is not ineffective for failing to anticipate or advocate for the overruling of a constitutional precedent of [the Supreme] Court.") (Kavanaugh, J., concurring in part).

Moreover, the petitioner was not prejudiced by the Indictment's omission of the knowledge-of-status element—or, therefore, by any failure of counsel to raise the issue. At trial, the jury was instructed correctly. ECF No. 85 at 145:25–146:1 ("the government must prove" that "at the time of the charged acts, the defendant . . . knew that he had been convicted of [a felony]"). And the petitioner does not allege that the outcome of any proceeding would have changed had the Indictment itself been amended to reflect the additional element required by *Rehaif*. Because the petitioner does not establish either of the *Strickland* prongs, the motion will be **DENIED** as to Ground Ten.

### viii.   *Ground Eleven: Appeal*

In Ground Eleven, the petitioner asserts that "his appellate counsel was ineffective by failing to address trial counsel's numerous errors and raise the issues found in the [§] 2255 motion." ECF No. 134 at 32. Because none of the other grounds regarding trial counsel's performance have merit, Attorney Bodner cannot have been ineffective for failing to raise them. Therefore, the motion will be **DENIED** as to Ground Eleven.

### B.      Motion to Dismiss (Ground Thirteen)

The petitioner filed a separate motion to dismiss Counts Five and Six of the Indictment. ECF No. 165. The motion argues that the statute upon which Counts Five and Six are based, 18 U.S.C. § 922(g)(1), is unconstitutional under the Second Amendment and the Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022).

Ordinarily, a defendant may only move to dismiss an indictment "before trial." *See* Fed. R. Crim. P. 12(b)(3)(B). However, if the indictment "violat[ed]" the Constitution . . . of the United States," a defendant may seek to vacate their conviction under 28 U.S.C. § 2255. *Miller*, 261 F.2d at 547. In deference to the petitioner's *pro se* status, the Court construes his Motion to Dismiss as a motion to amend his § 2255 petition. *See Castro v. United States*, 540 U.S. 375, 381–82 (2003) (noting that courts may "ignore the legal label that a *pro se* litigant attaches to a motion and recharacterize the motion"); *United States v. Patterson*, No. 23-6021, 2023 WL 6442563, at *1 (4th Cir. Oct. 3, 2023) (unpublished) (vacating and remanding a decision in which the district court "fail[ed] to liberally construe" a movant's motion based on *Bruen* "solely because [the movant] styled it as a motion to dismiss"). The motion to amend will be **GRANTED**, and the Court will consider the petitioner's arguments under *Bruen* as a thirteenth ground in his § 2255 petition.[12]

---

[12] The Clerk is **DIRECTED** to docket the petitioner's Motion to Dismiss (ECF No. 165) as an "Amendment to ECF No. 125," noting that the filing "shall be construed

The petitioner lodges a facial challenge to 18 U.S.C. § 922(g)(1). ECF No. 165. "To succeed in a facial constitutional challenge, a movant 'must establish that no set of circumstances exists under which the [law] would be valid.'" *United States v. Hosford*, 843 F.3d 161, 165 (4th Cir. 2016) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)); *see Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (movant bringing a facial challenge must show "that the law is unconstitutional in all of its applications").

At the time the petitioner filed his motion, the United States Court of Appeals for the Fourth Circuit had not decided a facial challenge to the felon-in-possession statute. Recently, however, the Fourth Circuit applied the *Bruen* framework and held that "[§] 922(g)(1) is facially constitutional." *United States v. Canada*, 103 F.4th 257, 258 (4th Cir. 2024); *see also United States v. Rahimi*, 144 S. Ct. 1889, 1902 (2024) (finding § 922(g)(8) facially constitutional). Thus, the Court must deny the petitioner's facial challenge to the statute. Accordingly, the petitioner's amended § 2255 petition will be **DENIED** as Ground Thirteen.

## C.    Motion for Release from Custody

Finally, the petitioner filed a request to be released from custody pending the outcome of the § 2255 petition. ECF No. 158. For the reasons explained in Part III.A., the petition does not "present[] a substantial constitutional claim upon which he has a high probability of success." *Perkins*, 53 F. App'x at 669. Even if success had been

---

as Ground Thirteen of the Motion to Vacate, Set Aside, or Correct a Sentence (ECF Nos. 125)."

probable, the petitioner did not demonstrate "that extraordinary circumstances warrant his release." *Id.* Accordingly, the Motion for Release from Custody will be **DENIED.**

## IV.  CERTIFICATE OF APPEALABILITY

"An appeal may not be taken from the final order in a § 2255 proceeding unless a judge issues a certificate of appealability ("COA")." *United States v. Day*, No. 3:07-cr-154, 2018 WL 4714778, at *2 (E.D. Va. Oct. 1, 2018) (citing 28 U.S.C. § 2253(c)(1)(B)); *see also* R. Gov. § 2255 Proc. in U.S. Dist. Cts. 11(a). Further, a "COA will not issue unless a prisoner makes a substantial showing of the denial of a constitutional right." *Day,* 2018 WL 4714778, at *2 (quotation marks omitted). Such a showing turns on whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotations omitted). The Court finds that the petitioner has met this standard with respect to Ground One only.

The petitioner testified that at sentencing, he was "under the impression that [he was] looking at more time than what [he] actually was looking at." ECF No. 175 at 15:12–13 (discussed in Part III.A.i., above). A reasonable jurist could conclude that this statement supports the petitioner's contention that he learned from the PSR that the two § 924(c) charges carried a lower combined mandatory minimum sentence than Attorney Johnson had advised him they did. Based on that conclusion, a judge could find that the petitioner established deficiency under *Strickland*.

40

Additionally, reasonable jurists could disagree about whether the petitioner rejected the government's offer because he had been misadvised about the consequences of the proposed plea agreement. This Court concluded that the petitioner turned down the plea offer because he was advised that he had a strong defense at trial. *See* Part III.A.i, *supra*. But a different judge could conclude that the petitioner did not have a strong defense. That judge could also reasonably give greater weight than this Court does to Attorney Johnson's testimony that he advised the petitioner to take the plea offer. A judge who drew those two conclusions might consequently conclude that (i) counsel advised the petitioner to accept the government's offer because counsel believed that, having lost on the motion to suppress, the petitioner no longer had any viable defense; and (ii) the petitioner nonetheless rejected the government's offer because—having been advised, incorrectly, that Counts Three and Four carried a combined minimum penalty of 30 years—he thought the offer was a worse deal than it actually was. Such findings might support a conclusion that the petitioner demonstrated prejudice under *Strickland*.

Because "reasonable jurists could debate whether . . . [Ground One] should have been resolved in a different manner," a certificate of appealability will be **GRANTED** as to Ground One. *Slack*, 529 U.S. at 484. The petitioner does not meet that standard on any other ground, so a Certificate of Appealability will be **DENIED** as to Grounds Two through Thirteen.

## V.      CONCLUSION

For the foregoing reasons, the petitioner's Motion to Vacate, Set Aside, or Correct a Sentence under 28 U.S.C. § 2255 (ECF No. 164) is **DENIED.**

A Certificate of Appealability is **GRANTED** as to Ground One but **DENIED** as to Grounds Two through Thirteen**.**

 The petitioner is **ADVISED** that he may appeal from this final Opinion and Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, VA 23510. The Clerk must receive this written notice within 60 days of the date of this Opinion and Order.

The Clerk is **DIRECTED** to send a copy of this Opinion and Order to the petitioner, Attorney Tyrone Johnson, and all counsel of record.

**IT IS SO ORDERED.**

_____ /s/ _____

Jamar K. Walker
United States District Judge

Newport News, Virginia
July 25, 2024